# CHARLESTON.

## PENNINGTON *v.* GILLASPIE.

Submitted September 9, 1909.     Decided January 25, 1910.

1.  APPEAL AND ERROR—*Harmless Error—Refusal to Strike Irrelevant Allegations.*

    Though under the civil damage act, section 26, chapter 32, Code 1906, as construed by this Court, no damages can be given a widow against a licensed retailer of spirituous liquors, because of injury to her means of support by the death of her husband, caused by intoxicants sold her husband by him, the refusal of the court on defendant's motion to strike out of her declaration certain references to the death of her husband, will not on writ of error to this Court be treated as error when it appears as in this case, that defendant was not prejudiced thereby, and that, in ruling on said motion the court announced that the questions presented thereby could and would be acted upon by the court on the trial of the case, and it further appears that on the trial the rights of the defendant were not prejudiced by the judgment of the court on his motion.   (p. 646).

2.  SAME—*Harmless Error—Overruling Demurrer.*

    Where upon demurrer to a declaration, and to each count thereof, the demurrer is overruled, and it appears that one or more of the counts are bad, and that the demurrer should have been sustained thereto; yet when it clearly appears that no evidence was admitted, or relief given on the defective count,

66 W. Va.

and that the rights of defendant were not prejudiced by the erroneous ruling of the court the judgment will not be reversed solely on this ground.   (p. 647).

3.   TRIAL—*Motion to Exclude Evidence—Waiver—Subsequent Introduction of Evidence.*

A defendant by introducing his own evidence after his motion to exclude the plaintiff's evidence has been overruled thereby waives his motion to exclude.   (p. 648).

4.   INTOXICATING LIQUORS—*Civil Damages—Limitations.*

In such an action by a widow against a licensed retail liquor dealer for injury to her means of support, due to illegal sales of intoxicants to her husband resulting in his death, she is limited in her recovery to damages accruing to her within one year prior to the date of her suit and up to the date of the death of her husband, and an instruction to the jury on this subject should so limit them in their verdict.   (p. 648).

5.   SAME—*Civil Damage Action—Exemplary Damages—Illegal Sale.*

In such an action by a widow against such retail liquor dealer, proof of the illegality of the sales of intoxicants by him to her husband supplies all the elements necessary in other actions of tort to show fraud, malice, oppression or wanton, willful, or reckless conduct, or criminal indifference to civil obligation on the part of the defendant, justifying the jury in awarding exemplary damages against him, as provided by statute.   (649).

6.   SAME—*Civil Damage Action—Damages—Instructions.*

In such an action if the plaintiff be entitled to actual damages, the jury may be told in an instruction that they may also award exemplary damages; but it is error to tell them that they should award exemplary damages.   (649).

7.   APPEAL AND ERROR—*Subsequent Appeal—Right to Correct Former Ruling.*

It is a general rule, with few, if any exceptions, that a matter decided on appeal becomes, in effect, *res judicata* in that case; or, as it is frequently expressed, it become the law of that case in all subsequent proceedings; but when on a second appeal or writ of error it appears that the position of the parties has not been changed, or their rights injuriously affected by an erroneous ruling of the appellate court on the first hearing, and that no injustice or hardship would result from overruling the former decision, and it becomes necessary to reverse the case for other errors, the appellate court may correct its ruling on the former appeal or writ of error, and direct the lower court on new trial to disregard the first ruling.   (650).

8. TRIAL.—*Civil Damage Actions—Instructions—Applicability to Evidence.*

In an action by a widow under said civil damage act, to recover from the defendant damages for injury to her person, and to her means of support, resulting from illegal sales of intoxicants to her husband, if there is no evidence of any injury to her person, it is error to submit to the jury in instructions given the question of damages to her person.   (653).

9. SAME—*Duty to Instruct—Requests Embraced in Charge Given.*

It is not reversible error for a trial court, having given one instruction thereon, to refuse to reiterate the same proposition by other instructions to the jury.   (p. 655).

10. INTOXICATING LIQUORS—*Civil Damage Actions—Instructions.*

In an action under said civil damage act it is not error to refuse to instruct the jury that if they believe from the evidence that the plaintiff's means of support derived from her husband for the year preceding the date of his death was as much and as adequate as it had theretofore been, they should find for the defendant.   The wife is entitled in each year to the best support, consistent with her station in life, that the husband in that year is capable of providing, and she should not be limited in her recovery by any such comparison.   (p. 655).

11. SAME.

And it is error in such an action to instruct the jury that if they should find that the plaintiff's husband had at all times retained within the year prior to his death sufficient money and property to properly support her according to her station in life she could not recover.   (p. 655).

12. SAME—*Civil Damage Actions—Damage—Sales by Agent.*

In such an action against him a liquor dealer is responsible for actionable injuries caused by sales of liquor made by his agents or servants within the general scope of their employment, though the particular sale in question was made without his knowledge or consent, or even in disobedience to his general or specific orders.   (p. 656).

13. TRIAL—*Civil Damage Actions—Instructions.*

It is not error for the court in an instruction to the jury on the subject of the weight and preponderance of the evidence necessary to support the plaintiff's case to refuse to tell the jury "that they may arrive at this conclusion *not* from the number of witnesses who may have testified on either side of the case, but from the demeanor, character, reputation or credibility of the witnesses."   Such an instruction unless some such word as "alone," or "merely" be inserted after the word "not," is

calculated to mislead the jury and induce the belief that they have no right to consider the fact of the number of witnesses. (p. 657).

14. INTOXICATING LIQUORS—*Civil Damage Actions—Refusal to Submit Special Interrogatories.*

It is error in the trial of such an action for the court, in the exercise of its discretion, to refuse to submit to the jury on the motion of the ·defendant a special interrogatory as to how much they had included in their verdict for actual damages, or in the alternative, how much was included therein for exemplary damages. It being one of the primary issues in the case, the plaintiff is entitled to know how much was found for actual damages, and thereby to ascertain the amount awarded for exemplary damages, and to be enabled thereby to test the correctness of the verdict on a motion for a new trial. (657).

Error to Circuit Court, Tucker County.

Action by Diannah J. Pennington against C. D. Gillaspie. Judgment for plaintiff and defendant brings error.

*Reversed and new trial awarded.*

*Cunningham & Stallings,* for plaintiff in error.

*J. P. Scott* and *J. William Harman,* for defendant in error.

MILLER, JUDGE:

The first error assigned is the overruling of defendant's motion to strike out certain parts of the first count, and his demurrer to the second count of the declaration.

Originally, the demurrer was general, and not to a particular count; and on the former hearing here, 63 W. Va. 541, 548, we held that the insufficiency of the second count did not vitiate the declaration as a whole. When the case went back for a new trial defendant then interposed his motion, and his demurrer to the second count, and the question now is presented whether the judgment of the court thereon was error prejudicial to the defendant calling for reversal.

The motion was to strike out of the first count the words, "when he lost his life as a consequence of the unlawful acts of the said defendant as hereinafter set forth"; also the words, "and prior to said mentioned day, and thence thereafter until his death occurred"; also the words, "up until his said death," the purpose being to eliminate all reference to the death of

plaintiff's husband, and to limit the evidence strictly to the question of damages to plaintiff's person and means of support, by reason of the unlawful sales made to him prior to his death. The grounds of the court's ruling upon said motion and demurrer, as stated in its order and certified in the bill of exceptions was, " that the questions presented thereby could and would be acted upon by the court at the trial of the case," and that the plaintiff's attorney had stated that he would not offer any evidence under the second count. If the court had stricken out these words of the first count, there remained other words alleging the date of the death of plaintiff's husband, and that defendant continued to sell him intoxicating liquors up to that time—words equally as objectionable as those covered by the motion. With those words in how could defendant have been prejudiced by the action of the court on his motion? Besides, it clearly appears that these allegations were intended simply to fix the date of the death of deceased, and not as a foundation of recovery, and in as much as on the trial the court, by its rulings on the evidence and on instructions given the jury, limited plaintiff in her recovery to injuries sustained prior to the death of her husband. We see no reversible error in this action of the court.

But the ruling on the demurrer presents a more serious question. Clearly the second count is bad, and the demurrer should have been sustained. But has the defendant been prejudiced thereby? Very high authority says: "Confusion frequently results from applying the settled rule, that a ruling sustaining a demurrer to one of several paragraphs of a pleading is harmless in a case where there are other paragraphs of a pleading under which all of the facts can be proved, to a case where a demurrer is overruled to one of several paragraphs. The cases are radically different. It can not possibly do the party whose demurrer is overruled any good to hold that there are other paragraphs under which all the evidence is admissible, although it may do his adversary a vast deal of good to so hold. It is no benefit to the party who demurs that his adversary may give evidence under other paragraphs, although to the adversary the benefit may be very great. In holding a defective paragraph good the court adjudges that if the party by whom it is pleaded proves it he will be entitled to recover. No such thing is ad-

judged where a demurrer is sustained to one paragraph of several. It is true that it is adjudged that the paragraph is insufficient, but no harm can result from such a ruling, if, in fact, no competent evidence is excluded, and it is not excluded if other paragraphs are left standing which entitle it to admission. It is far otherwise where an insufficient paragraph is adjudged sufficient, for there is nothing to aid the party who demurs." Elliott on Appellate Proc., section 669. The doctrine of this text is supported, not only by the authorities cited, but by our own cases of *Van Winkle* v. *Blackford,* 28 W. Va. 670, and *Bank* v. *Kimberlands,* 16 W. Va. 557; also by *University* v. *Snyder,* 100 Va. 567, as well as by sound reasoning. We have concluded, however, without thereby approving the action of the court below, that if we had not found other errors requiring reversal, we would not reverse the judgment solely on this ground. The evidence was limited, and the jury by instructions given were limited in their verdict to the first count of the declaration.

Defendant's motion to exclude the plaintiff's evidence, overruled, is next relied on. We think this motion was without merit. Besides, the defendant after the ruling on his motion introduced his evidence; and, as heretofore ruled by this Court, he thereby waived his motion to exclude. *Carrico* v. *Railway Co.,* 35 W. Va. 389; *Overby* v. *C. & O. R. R. Co.,* 37 W. Va. 524; *Poling* v. *Ohio River R. Co.,* 38 W. Va. 646; *Fuller* v. *Margaret Mining Co.,* 64 W. Va. 437.

After defendant's motion to exclude the whole of plaintiff's evidence was overruled, he undertook to apply the same motion specifically to the evidence of plaintiff claimed to relate to the death of plaintiff's husband as an injury to her means of support. We are referred to no specific evidence of that kind, and we find none. The court below, while admitting evidence of the fact and date of death, limited recovery to loss of support occurring prior thereto, and though the motion was overruled, the evidence of death, being so limited, resulted in no apparent injury to defendant and the point is without merit.

The other errors relied on relate to the giving and refusing of instructions to the jury, and to the refusal of the court below to submit to the jury special interrogatories numbered 3 to 7, inclusive, propounded by defendant.

First, as to plaintiff's instruction number one, given. This

instruction is identical with her number one on the former trial, except the last clause added, limiting recovery to damages arising from sales made prior to July 23, 1905, being one year prior to the date of the suit. This was the one defect to which the court's attention was called on the former hearing. But that defect being cured, the defendant on this hearing claims that this instruction is bad for another reason, namely, that it does not limit plaintiff's recovery to damages accruing prior to June 26, 1906, the date of Pennington's death. According to our former decision this is the law of this case, and it was so conceded during the trial. No instruction given on behalf of plaintiff strictly limits recovery to that date, but number 6 substantially does so. Besides, defendant's instructions numbered 10, 11 and 12, given, three times allude to this date as fixing the time within which any damages sustained must be limited; and while we think instruction number one should have contained such limitation, yet as on the trial that date appears to have been conceded as limiting the recovery, and as the defendant's instructions numbered 10, 11, and 12, substantially did so, we would not be disposed to reverse the judgment for this error alone. But is not this instruction bad for submitting to the jury the question of injury to plaintiff's person? We think it is, for reasons which will be given in disposing of the objections to instruction number 4, erroneous for the same reason.

Plaintiff's instructions numbers 2 and 3, assailed, are identical with her instructions numbers 4 and 5, given on the former trial. As the court understood the objection to these instructions then was that they were predicated on damages resulting from sales made by defendant's bar-tender, as well as sales by defendant personally, not covered by specific allegation in the declaration. This objection we then regarded groundless.

But more serious objections are now urged. The first is that there is no evidence on which to found the facts assumed in these instructions. This objection we think groundless. There was certainly some evidence of illegal sales, the only fact assumed. The second objection is that it was error to tell the jury, as was done in number 2, that if they should find that illegal sales had been made to plaintiff's husband, they *should* find they were willfully and wantonly made, and that they might find exemplary damages. The third objection is that it was im-

proper to tell the jury, as was done in number 3, that they *should* find "exemplary damages," in addition to actual damages to plaintiff's means of support. The second objection we think as groundless as the first. Cases arising under our civil damage law are *sui generis.* If sales be made illegally, in violation of the express command of the statute, whether made by principal or agent, in the eye of the law, as heretofore construed, they are deemed to have been made willfully and wantonly. The illegality thereof, the violation of the law, by principal or agent, supplies all the elements, necessary in other cases to show fraud, malice, oppression, or wanton, willful or reckless conduct or criminal indifference to civil obligation on the part of defendant, and justifies the jury in imposing on the wrongdoer, for his infraction of the law, exemplary damages. *Mayer* v. *Frobe,* 42 W. Va. 246, 264-5; *McMaster* v. *Dyer,* 44 W. Va. 644, 648. An illegal sale implies knowledge of the facts rendering it illegal, and a willful and wanton disregard of the rights of those affected thereby. 23 Cyc. 330. But it is earnestly insisted that *Mayer* v. *Frobe, supra,* is not applicable in an action against the principal where the sale is made by a bar-tender or agent without his knowledge or approval. Our answer is that the statute makes him so liable. This question will be considered in connection with defendant's instruction number 14.

But was it proper to tell the jury in instruction number 3 that they *should* find exemplary damages? We had occasion in the recent case of *Fink* v. *Thomas,* not yet reported, to carefully consider this subject of exemplary damages, with reference to instructions to the jury thereon. We held in that case that exemplary or punative damages in an action of tort are not matter of right, it being with the jury to say whether or not they shall be given, and that "an instruction binding the jury to give exemplary damages is erroneous." This law would render this instruction bad as an original proposition. Whether, because approved on the former hearing, it must be regarded as the law of this case is a question to be considered later.

But are these instructions so approved by this court on the former hearing *res judicata,* or as the law books sometimes say, the law of this case, binding us on this hearing, and the court below upon another trial to be awarded? We should settle this question in order to promote justice and to avoid further

litigation.  On the former hearing we passed only on the particular point presented and considered, and then perceived no other errors in the instructions.   The point on which our opinion now turns was not considered, or disposed of, except in the general way stated, and is not made a point of the syllabus.   The court below, on the second trial was necessarily bound by the mandate of this Court, and we think ourselves also bound thereby on this hearing if no other errors are found requiring a reversal of the judgment now under review, for the general rule is that if it appear from the record that the point in controversy was necessarily decided in the first suit, it can not be again considered in any subsequent suit between the same parties or their privies.  *McCoy* v. *McCoy,* 29 W. Va. 795, 807.   For other cases, see 6 Ency. Dig. Va. & W. Va. Rep. 341 *et seq.*   And it is also the general rule, subject to few, if any, exceptions, that a question of law or fact once definitely settled and determined by this Court, on remanding the case for further proceedings, is conclusive on the parties and privies thereto, and upon the court below, and upon this Court upon a second appeal or writ of error.  *Henry* v. *Davis,* 13 W. Va. 230; *Seabright* v. *Seabright,* 33 W. Va. 152; *Wick* v. *Dawson,* 48 W. Va. 469; *Butler* v. *Thompson,* 52 W. Va. 311, 314.  On this subject Mr. Van Fleet, 2 Van Fleet's Former Adjudication, section 664, says: "If a cause is reversed in a higher court the lower one is bound to proceed in accordance with the opinion sent down. The parties are compelled to retry the case on the new rules laid down, and to shape their respective causes of action or defense accordingly. Having done so, and in many cases having irretrievably changed their positions, it would work injustice to overturn these rules on a second appeal, and these again on a third, and so on, *ad infinitum.*  The suit might never end.  Besides, it would be very undignified, and tend to bring the courts into merited disrespect, if the lower court should be compelled to retrace its steps on one appeal, and then to trace them back again on a second, and so on.  Hence, with a few exceptions, it is a rule that a matter decided on appeal becomes, in effect, *res judicata* in that cause; or, as it is frequently expressed, it becomes the 'law of the case' in all its subsequent proceedings."  But this writer, in the same section, approves the doctrine of *Cluff* v. *Day,* 141 N. Y. 580.  The New York court says:   "There

is no iron rule which precludes a court from correcting a manifest error in its former judgment, or which requires it to adhere to an unsound declaration of the law. It may, for cogent reasons, reverse or qualify a prior decision, even in the same case. But the cases in which this will be done are exceptional, and the power should be sparingly exercised." The same doctrine, as this writer shows, was advanced in Texas, Missouri, Tennessee and Iowa, in *Bomar* v. *Parker,* 68 Texas 435 (4 S. W. R. 599, 606) ; *Bird* v. *Sellers,* 122 Mo. 23 (26 S. W. R. 668) ; *Bynum* v. *Apperson,* 9 Heisk. (56 Tenn.) 632, 644; *Barton* v. *Thompson,* 56 Iowa 571 (9 N. W. R. 899). The Missouri case of *Bird* v. *Sellers, supra,* says: "This is not an inexorable rule without exceptions, but has been frequently departed from, when such adjudication has been found to be wrong, not in harmony with other decisions of the court, *and no injustice nor hardship would result from overruling the former decision."* In *Barton* v. *Thompson,* the Iowa court says: "As the court below followed the rule originally adopted in this case, we would not feel justified, under the authorities above referred to, in adopting a different rule upon this appeal, which would lead to a reversal of the case. But, as it becomes necessary to reverse this case upon other grounds, and as the rule originally adopted has been overruled in another case, and is no longer the law of the State, it will be the duty of the court in the further prosecution of this case to follow the rule adopted in *Welch* v. *Jugenheimer, supra."* We think this case precisely in point, involving as it does a ruling on an erroneous instruction to the jury, and that it is good law. It does not impugn the general rule, followed in our own cases, and as no injustice will be done, and a modification of our former ruling will not lead to a reversal, we think we should so far modify our former ruling on these instructions as to hold them bad in the particulars pointed out, and that if offered on another trial they should be modified as now indicated.

Plaintiff's instruction number 4, complained of, is a modification of her number 6, held erroneous on the former hearing. As propounded on the original trial it contemplated damages for future support, and was held bad, along with other instructions disapproved for the same reason. The instruction as given on the second trial, except the words in parenthesis which were stricken out, the words italicized having been inserted, is as

follows: "The court instructs the jury *that* in determining whether the plaintiff was injured in her means of support, *or in her person,* by the act or acts of the defendant, they should consider whether as a result of the act or acts of the defendant as charged in the declaration, the means of the plaintiff's (future) support (have been cut off, or) *were* diminished below what (is) *was* reasonable and competent for a person in her station in life and below what they would otherwise have been; *and as to injury to her person, whether as a consequence of such act or acts, she suffered humiliation or grief.* And (that) the plaintiff, *in order to entitle her to damages to her means of support,* is not required to show that she has been at any time in whole or in part without *present* means of support in order to entitle her to damages to such means of support." The only objection urged to this instruction, as given on the second trial, is that it told the jury they might assess damages for humiliation and grief, not by the statute made a ground of recovery. For this we are cited to *Calloway* v. *Laydon,* 47 Iowa 456. And 7 Ency. of Ev. 709 is also cited for the same proposition. These authorities do not fully support the proposition as stated. Section 26, chapter 32, Code 1906, authorizes recovery of actual damages on three grounds, and on three grounds only, namely: (1) Injury to the person, (2) injury to property, and (3) injury to means of support. All the authorities, including those cited by counsel, hold that under a statute like ours an action for injury to the person can not be sustained without showing actual physical violence, or physical harm or suffering sustained by the plaintiff at the hands of the intoxicated person, and that mental suffering, that is plaintiff's sorrow, fear, or anxiety, or mortification, or disgrace, caused by the publicity of his degradation or estrangement or loss of his society and companionship, will not alone entitle her to recover, without proof of actual injury to person, property or means of support. 23 Cyc. 311, 313, and cases cited in notes; Black on Intox. Liquors, section 306. The possible suggestion in the last authority that assault alone would do is not supported by *Mulford* v. *Clewell,* 21 Ohio St. 191, the only case cited therefor. 'We think that case implies the contrary, and that some physical violence or injury is required. The instruction under consideration is predicated on two of the grounds for actual damages, viz: In-

jury to the person, and injury to plaintiff's means of support. It assumes there is evidence to support both theories, justifying the instruction in its dual form, but, impliedly at least, if not in express terms predicates right of recovery for humiliation and grief on the theory of injury to plaintiff's person, rendering the instruction bad for this reason, and for submitting to the jury the question of injury to the person, unless there is evidence on which that theory could properly be predicated. There is some evidence of injury to plaintiff's means of support, justifying the instruction on that theory, but we fail to find a particle of evidence of any actual physical injury to the person of the plaintiff. There is evidence that her husband, on one or more occasions, while intoxicated on somebody's liquor, threw a cup or two at her, but they did not hit her, and she does not claim to have sustained any physical injury therefrom nor is it proven by any witness that plaintiff sustained any impairment of health from the acts or conduct of her husband, so as to bring the case within the rule. We think this instruction clearly bad, therefore, and should not have been given. If it had limited plaintiff's recovery for actual damages to injury to her means of support, and had told the jury that if they found she had sustained injury thereto, they might consider, in ascertaining exemplary damages, if any, her humiliation and grief, if any, resulting from illegal sales of liquor by defendant to her husband, we think the instruction would have been good. It is only when a foundation for actual damages has been laid that humiliation and grief and like elements of injury to the susceptibilities may be taken into account as a ground for awarding exemplary damages. 23 Cyc. 313, 329, and cases cited; Black on Intox. Liquors, section 309; *Pegram* v. *Stortz,* 31 W. Va. 220; *Lucker* v. *Liske,* 111 Mich. 683; 7 Ency. of Ev. 708; *Calloway* v. *Laydon, supra; Mayer* v. *Frobe, supra.*

Plaintiff's instructions numbers 5 and 6 are also objected to. Number 5 defines the words of the statute, "means of support." It is defective, as are numbers 1, 2 and 3, in not limiting recovery for actual damages to damages to plaintiff's means of support accruing within one year prior to the date of the suit and prior to the date of the death of Pennington; and also in telling the jury, as it in effect does, that they *should* find exemplary damages, and both number 5 and 6, like number 4, are

erroneous in submitting to the jury, without evidence justifying it, the question of injury to plaintiff's person.

Now as to defendant's instructions. There was no reversible error in rejecting his instructions numbered 2 and 7. They are substantially the same as numbers 1, 3, 4 and 6, given, telling the jury in 'a little different language that they could find no damages against defendant by reason of the death of the plaintiff's husband, and there was no error in not reiterating this proposition.

Instructions numbers 8 and 9 are substantially the same. Number 8 would have told "the jury that if they believe from the evidence that the plaintiff's means of support derived from her husband for the year preceding June 26, 1906, was as much and as adequate as had theretofore been, then the jury should find for the defendant." This instruction we think did not propound the law correctly. The jury might have been told with the same consistency, that if they found plaintiff had been as well provided for in the year prior to the death of her husband as during the first or second years of her marriage, she could not recover. Plaintiff was entitled to the best support, consistent with her station in life, during that last year of her husband's life, as he was capable of giving her, and the jury would not be authorized to limit their findings by any such comparisons. Number 9 would have told the jury that plaintiff could not recover if they found her husband had at all times retained within the year prior to June 26, 1906, sufficient money or property to properly support her according to her station in life—in effect that if he had retained sufficient land, or other property, already accumulated, which, by selling, and reducing to money, he could have maintained her during the year as indicated, she would be barred of recovery for loss of means of support. We do not think this is the law. Men are slow to so use their accumulated property. Support usually, naturally and properly comes from the earnings of the husband, and the wife has at all times the right to such means of support, and she is not obliged to look to the money or property accumulated by her husband, to shield the liquor seller from the consequences of his unlawful acts. This instruction we think was also properly rejected.

Complaint is made on acount of the rejection of defendant's

instruction number 13. It would have told the jury that before they could assess exemplary or punative damages against defendant they must find that the sales complained of were unlawfully made, and were willfully, wantonly, maliciously or with criminal indifference to the civil right of plaintiff. As we have seen the law is that if a sale be unlawful it is by force of the statute willful, wanton, malicious and criminal. No other element except the unlawfulness of the sale is required to render it so, and to justify the jury in imposing exemplary damages. As proposed this instruction was misleading. It implied that something more was required besides the illegal sale to render the act of selling willful and wanton, and for this reason was properly refused.

Defendant's instruction number 14 was also rejected, and he complains of that. It is predicated on the theory that a liquor seller is not liable for illegal sales made by his bartender or agent without his knowledge, consent or permission, and would have told the jury that if they found the sales complained of had been so made by the bartender or agent of defendant, and that plaintiff had been injured thereby in her means of support, they should award her only such real and actual damages as they might find from the evidence she had sustained thereby. This is not the law. On the authority of numerous judicial decisions, cited, the general rule is thus stated in Black on Intox. Liquors, section 298: "In accordance with the general principles governing the relation of master and servant, it is held that a liquor-dealer is responsible for actionable injuries under the civil damage laws, caused by sales of liquor made by his agents or servants within the general scope of their employment, though the particular sale in question was made without the knowledge or consent of the master, and even though it was made in disobedience of his general or specific orders." The same law is laid down in 23 Cyc. 320. In Illinois, as Mr. Black observes, an exception to the general rule, not in harmony with our cases, has been ingrafted upon it. We think the instruction was rightly rejected.

The rejection of defendant's instruction number 16 is also assigned as error. We think it erroneous, and that it was properly refused, for the reasons given for sustaining the ruling below rejecting defendant's instructions numbers 8 and 9. This

instruction would have told the jury that if they should find from the evidence that plaintiff's support derived from her husband during the year prior to his death was as adequate as it had been before that time, and that such support was according to her station in life, they should find for defendant. The plaintiff could not be limited in her recovery by any such comparisons.

Defendant's instruction number 17 was given as modified by the court. He complains that it was not given as propounded. As proposed the instruction was as follows: "The court instructs the jury that it is the duty of the plaintiff to prove her case by a preponderance of the evidence, and if the jury believe that the evidence considered as a whole is equally balanced or weighs or preponderates in favor of the defendant, then the jury should find for the defendant; *and the court further instructs the jury that they may arrive at this conclusion not from the number of witnesses who may have testified on either side of the case, but from the demeanor, character, reputation or credibility of the witnesses.*" The court struck out the clause in italics. Was this error? Of course the instruction was good as given, but if good as proposed defendant was entitled to its benefit. We think it technically bad. If it had contained the word "alone" or "merely", after the word "not" in the part stricken out, it would, in our opinion, have been good. Oxley, Inst. to Jur. 231. But as proposed the instruction would in effect have told the jury that the number of witnesses was not to be considered. This was calculated to mislead them.

Lastly defendant complains of the refusal to submit certain interrogatories to the jury. Seven were asked, but only the first and second were approved, and the record fails to show that the two approved were actually submitted to the jury, or that they made any response thereto. The approved interrogatories were as follows: (1) "Did the plaintiff sustain any injury to her means of support from the 23rd day of July, 1905, to the 26th day of June, 1906, by reason of sales made of intoxicating drinks by the defendant to her husband, A. J. Pennington?" (2) "Was there any illegal or unlawful sales of whiskey within the time above stated made to A. J. Pennington by the defendant or his bar-tender?" The general verdict we think was a

substantial answer to these interrogatories, and under the evidence import an affirmative answer to both. The other interrogatories were as follows: (3) "If the jury find in the affirmative to the first of these two interrogatories, then how much actual damages did she sustain to her means of support by reason of illegal and unlawful sales of intoxicants being made to her husband by the defendant or his bar-tenders from the 23rd of July, 1905, to the 26 day of June, 1906?" (4) "Were any such illegal and unlawful sales made wantonly, willfully, maliciously and in total disregard of the plaintiff's civil right?" (5) "If the jury find in the affirmative to the above interrogatory, then how much exemplary damages do they assess, if any, against the defendant?" (6) "Is any part of the jury's findings for damages for liquor procured by the husband of the plaintiff at places other than the defendant's saloon within said period?" (7) "Is any part of your verdict assessed as damages for injury to the means of support of the plaintiff by reason of the death of the plaintiff's husband?"

The fourth interrogatory was improper for the reasons given in approving the rejection of defendant's instruction number 13. The fifth would have been immaterial if the third had been given and answered, or *vice versa,* for if the amount of actual damages included in the verdict had been found in response to the third interrogatory, or the exemplary damages found in response to the fifth interrogatory the amount called for in both interrogatories would have been easily ascertainable by subtraction from the total amount of the verdict, and defendant would not have been prejudiced. We are of opinion, therefore, that the court erred in refusing to submit to the jury both of these interrogatories. The defendant was entitled to have the jury say what amount was included in their verdict for actual damages. Before exemplary damages can be found, actual damages for injury to the person, property or means of support, supported by evidence, must be found. The amount of such actual damages depend on the evidence, not upon the mere caprice or imagination of the jury. The amount of actual damages found depended on the evidence and was subject to the control of the court below, on a motion for a new trial, and if within the jurisdiction of this Court, by us on writ of error. The same is true also as to exemplary damages, for we think such

damages should bear some reasonable proportion to the actual damage done else they would be unreasonable and excessive, evincing partiality and prejudice on the part of the jury, so as to justify the court in setting the verdict aside. 23 Cyc. 327-331; *Stevens* v. *Friedman,* 58 W. Va. 78.

It may be said that if the interrogatories had not been rejected the court would not be justified by the amount found in disturbing the verdict, the defendant not appearing to be prejudiced thereby. Our answer is that the question of actual damages was the primary issue in the cause, and we think defendant had the right to test the correctness of their verdict by requiring the jury to say how much they had included therein for actual damages, for if more actual damages were found than the evidence justified, their special finding would control their general verdict, and set it aside. This we understand to be the purpose of the statute. Section 26, chapter 32, Code 1906; *Peninsular Land &c. Co.* v. *Franklin Ins. Co.,* 35 W. Va. 666. While the subject of submitting special interrogatories is largely in the discretion of the trial court, this is not an arbitrary discretion, and is subject to review by this Court, for error therein. If the answers thereto would control the general verdict the interrogatories should be submitted to the jury. *Bridge Co.* v. *Bridge Co.,* 34 W. Va. 155; *Andrews* v. *Mundy,* 36 W. Va. 22; *Kerr* v. *Lunsford,* 31 W. Va. 659.

We do not think defendant was prejudiced by the rejection of his interrogatories number six and seven. The jury was told by instructions given that they could find no damages for liquor procured by Pennington at places other than the saloon of defendant, and that they could not find any damages against defendant by reason of the death of plaintiff's husband, and it is not to be presumed they disobeyed these instructions in arriving at their verdict.

We regret to again reverse the judgment in this case. But after eliminating, as we have tried to do, all errors founded on mere technicalities, our duty seems plain. We are unable to overlook the fact that while the statute under which this suit was brought was designed, along with the criminal statute, to suppress the evils of intemperance, yet it contemplates that substantial damages be shown by legal and competent evidence, before a jury will be justified in adding the punishment of

exemplary damages. The statute was not intended to give damages where there are none, in order to furnish a basis for mulcting a defendant with exemplary damages, and the enrichment of another, not specifically effected by the unlawful act complained of. The criminal laws provide for punishment of the lawbreaker.

Our opinion is to reverse the judgment, and award the defendant a new trial, and it will be so ordered.

*Reversed, and New Trial Awarded.*

NOTE BY BRANNON, JUDGE:

I would set aside the verdict for the additional reason that the evidence does not prove loss of support with legal certainty. It gives no data on which to base compensatory damages, that is to measure and fix the amount. This being so any punative damages cannot be allowed.