# CHARLESTON.

MAYFORD ELIHU SUMMERS *et als.* *v.* CHARLES E. SUMMERS *et als.*

(No. 6367)

Submitted February 19, 1929. Decided February 26, 1929.

*M. M. Robertson* and *L. E. Given,* for appellants.

*Lilly & Lilly, Orville Hackney* and *John T. Copenhaver,* for appellees.

MAXWELL, JUDGE:

This case involves the trial of an issue *devisavit vel non.* The proponents of the will offered the same in evidence before the jury, proved its execution and the circumstances thereof, but offered no testimony on the question of the testamentary capacity of the testator at the time of the execution of the will. The attesting witnesses, who were examined at the trial, were not questioned as to their opinion of the testator's mental condition at the time that he executed the will. That entire matter was left to inference and deduction. At the conclusion of the testimony of the proponents, the contestants moved the court to strike out the evidence of the proponents and to direct a verdict for the contestants, which motion the court overruled, and the contestants excepted. The record does not disclose that the grounds of the motion were presented to the court. Perhaps if that had been done and the

court's attention directed to the matter wherein the contestants claimed that there had been a failure on the part of the proponents to discharge the burden devolving upon them, a different ruling might have obtained, and thus have avoided delay and expense to the litigants. But however that may be the contestants by introducing their own evidence after the motion to exclude was overruled waived the benefit of their exceptions to the court's ruling on said motion. *Pennington* v. *Gillaspie*, 66 W. Va. 643, and cases cited. The contestants offered evidence at length tending to show that the will was a forgery. Rebuttal evidence was then introduced by the proponents. The jury by its verdict upheld the will. The court overruled the motion of the contestants to set aside the verdict and award a new trial, and thereupon entered a decree in conformity with the verdict. To that decree the contestants prosecute this appeal.

The proponents take the position that though no witness was specifically asked to state his opinion of the mental capacity of the testator at the time of the execution of the will such capacity appears from the circumstances of the execution of the will and from the testimony as to the actions and words of the testator at the time of the execution of said instrument, and both prior and subsequent thereto. They say that the circumstances themselves speak louder than would any mere expression of opinion of witnesses. Granting for discussion that that position is well taken, it follows, of course, that it is for the jury, under proper instructions of the court, to weigh and determine such circumstances, and to pass upon the testamentary capacity of the testator. This was not done. The case was not tried on the theory, clearly presented to the jury, that the burden rested on the proponents to prove the testamentary capacity of the testator. The only instructions bearing directly or indirectly on the subject were three which were given on behalf of the proponents over the objection of the contestants. These instructions are so phrased as to submerge the matter of testamentary capacity. The first two ignored that important matter altogether, although they purported to recite the bases of proof on which the jury could find for the proponents, and the third one called special atten-

tion to the fact that there was no proof of testamentary incapacity.

The instructions referred to are proponents' instructions Nos. 2, 3 and 7. Instruction No. 2 told the jury, in substance, that if they believed from the evidence that the testator's son Charles wrote the instrument in question as dictated to him by his father, and that after the writing of the same it was read to the testator by his son in the presence of the attesting witnesses, and that the testator then signed the paper in the presence of the witnesses and that they at his request signed the same in his presence and in the presence of each other, the jury should find that the said paper writing constituted the last will of the said testator. This instruction as tendered by the proponents contained these words: "and if you further believe that the said James C. Summers was mentally competent to understand the nature of his act". The court struck these words out of the instruction before reading it to the jury. Instruction No. 3 told the jury, in substance, that if they believed from the evidence that the said instrument was written by the son at the request and dictation of his father, and that after it was written it was read by the son to his father and that at the father's request the son signed the father's name to the will, the father touching the pen and making his X mark, that the signature so made was a sufficient signing of the paper. This instruction as tendered by the proponents contained this phrase: "and was mentally and physically capable of understanding the nature of his act." Before giving the instruction to the jury, the court struck out this phrase. Instruction No. 7 contained the naked statement of fact that there was no evidence in the case tending to show that the decedent was mentally incompetent to make a will on the date of the execution of the questioned instrument, April 21, 1927, and further that there was no evidence tending to show that undue influence was executed upon the said decedent in relation to the making and executing of the said instrument. With the two quoted phrases eliminated from instructions Nos. 2 and 3, respectively, and with instruction No. 7 telling the jury that there was no evidence tending to show testamentary incapacity, there was presented to the

jury the necessary implication that in the absence of testimony tending to show testamentary incapacity the existence of such capacity was to be presumed. This is not the law of this jurisdiction.

In the case of *Payne* v. *Payne,* 97 W. Va. 627, JUDGE MEREDITH, upon careful review of the authorities and particularly of the cases in the Virginias, thus concludes: "Clearly, under the principles above announced, the law of this jurisdiction is that it is the proponent in a proceeding like the present who carries the burden of proof as to testamentary capacity." The proposition is thus carried into the syllabus of the case: "In a chancery proceeding to set aside a will the burden of proving the due execution of the will and the testamentary capacity of the decedent is upon the proponents. The burden of proving undue influence, however, is upon the contestants."

The procedure at the trial cannot be justified on the ground that the attack of the contestants was predicated on the charge that the will was a forgery, and that nothing appears to indicate that they questioned the testamentary capacity of the decedent. This in no wise affects the proposition that it should have been made clear to the jury that they could in no event sustain the will unless they believed from the evidence that the decedent possessed testamentary capacity at the time he executed it. It was prejudicial error to leave them under the impression that in the absence of evidence of testamentary incapacity, they were to presume him competent.

For the reasons aforesaid, we reverse the decree, set aside the verdict, and remand the cause for further proceedings.

*Reversed and remanded.*