# CHARLESTON.

MARY C. WILSON *v.* WEST VIRGINIA AMUSEMENT CO.

## (No. 5235)

### Submitted May 5, 1925.    Decided June 2, 1925.

1. APPEAL AND ERROR—*Verdict for Plaintiff Not Set Aside as Contrary to Evidence, if Weight and Preponderance of Conflicting Evidence is Not Clearly in Favor of Defendant.*

    A verdict in favor of a plaintiff will not be set aside as contrary to the evidence where the controlling questions of fact are in sharp conflict, and the weight and preponderance of the conflicting evidence is not clearly in favor of the defendant.    (p. 288).

    (Appeal and Error, 4 C. J. § 2836).

2. SAME—*Verdict Not Disturbed Because of Admitting Improper Evidence Which Did Not Affect Verdict to Prejudice of Losing Party.*

    If improper evidence has gone to the jury, but it is apparent that it did not affect the verdict to the prejudice of the losing party, the verdict will not be disturbed for that reason.    (p. 292).

    (Appeal and Error, 4 C. J. § 2952).

3. SAME—*Verdict of Jury as to Value of Personal Property at Conversion is Generally Conclusive, unless So Unreasonable as to Show Passion, Partiality, Prejudice, or Corruption.*

    The reasonable value of personal property at the time of its conversion not being ascertainable by exact rule of measurement, the verdict of the jury as to its value is generally conclusive, unless it is so unreasonable as to evince passion, partiality, prejudice, or corruption.    (p. 294).

    (Appeal and Error, 4 C. J. § 2846).

4. TRIAL—*If Law is Correctly Stated in Instructions Considered as Whole, Verdict Will Not be Set Aside for Failure*

*of Some Particular Instruction to State at Length  Theory Relied on by One of the Parties.*

Instructions must be considered as a whole, and if the law governing the contentions of the parties is correctly stated in them, the verdict will not be set aside because some particular instruction standing alone does not state at length a theory of the case relied upon by one of the parties. (p. 293).

(Trial, 38 Cyc. pp. 1778, 1779).

(Note:  Parenthetical references by Editors, C. J.—Cyc.  Not part of syllabi).

Error to Circuit Court, Marion County.

Action by Mary C. Wilson against the West Virginia Amusement Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Walter R. Haggerty* and *Ira L. Smith,* for plaintiff in error.
*John Wyatt* and *Rollo J. Conley,* for defendant in error.

LIVELY, PRESIDENT:

This suit involves a dispute over the rental and conversion of building machinery owned by plaintiff and used by defendant.  Defendant contracted with the Valley Engineering Company to build for it a theatre building in the City of Fairmont.  The Engineering Company rented from plaintiff machinery to be used in carrying out the contract.  This machinery had been used in railroad construction work, and was second-hand.  Its value was fixed in the contract at $3,400.00, the rental to be paid monthly at one-half of one per cent. per day of the agreed valuation.  The Engineering Company began the construction, using the rented machinery for about 90 days, when it turned over the building, partly constructed, to defendant, the owner, by contract dated September 13, 1922, which adjusted their outstanding contractual relations.  It was provided in this contract that before it should become effective, plaintiff should agree by assignment that the machinery then in use at or on the premises of defendant could be used by defendant for and during such time as it should deem necessary, and at the valuation and rental agreed upon.  Defendant took over the rental contract between plaintiff and the Engineering Company

by the oral assent of plaintiff. It seems that there was other machinery in use not owned by plaintiff, but probably by the Engineering Company, and plaintiff was to furnish an affidavit of the machinery owned by her so as to distinguish it from the other machinery. This affidavit was made and delivered to Hawkins, who was in charge of defendant's work on the building, on October 19, 1922. It was provided further by the contract that defendant when and at such times as it should decide that the machinery was no longer needed by it, should turn over the same to the proper owners thereof in as good condition as it was then in, ordinary wear and tear excepted, at such places as the owners should decide, within the city limits. Defendant took over the work and plaintiff's machinery, and on the 16th day of February, 1923, notified plaintiff that the machinery was released as of February 14th; that it had finished with and had no further use for designated portions of the machinery, being all of her machinery then being used by defendant. She says she never received notice of release of other portions of the machinery claimed to have been released prior to that time by the defendant. The rents were not promptly paid to her. After the 16th day of February, 1923, the parties attempted to get together and "check off" the machinery released, but failed to do so, each party accusing the other of refusing to meet in order to "check off." The "check off" is explained to mean a custom by which the condition and damage is ascertained when rented machinery is returned to the owner. In the meantime most of the machinery was moved by defendant to a lot owned by the Fairmont Hotel Company and one boiler was left on the back portion of the theatre lot. According to plaintiff's witnesses the machinery had been broken and damaged and almost worn out, some of it gone, and the remainder left exposed to the weather where stored. Failing to receive the balance of her rent, and failing to induce defendant to "check off" the machinery and deliver it to her on her premises at 10th Street where she had storage for it and from which place it had been taken, she instituted this action in assumpsit in July, 1923. The declaration con-

tains the common counts and in addition thereto a count for rents unpaid and for the value of the machinery appropriated by defendant to its own use. A bill of particulars filed with the declaration sets out by items the machinery converted, with the value of each, making a total of $2,878.00, and the rents unpaid at $2,631.50, making a total of $5,501.50 for which she seeks recovery. In the items of machinery are included a mounted 20 H. P. boiler which was valued at $800.00 at the time of the alleged conversion. This boiler was taken by defendant, without plaintiff's consent, from her storage at 10th Street, to supply the place of a like boiler belonging to her which was in use in the construction when defendant took over the work, and which became defective in certain particulars and was cast aside as useless, during the progress of the work. Defendant pleaded non-assumpsit. The jury found for plaintiff in the sum of $3,647.59, and the court deeming the verdict to be excessive in the sum of $358.59, plaintiff assented to a reduction of that amount and judgment was rendered for $3,289.00, on May 15, 1925. This writ was granted to that judgment.

Error is assigned: (1) because the verdict is contrary to the law and evidence; (2) because of admitting improper and refusing proper evidence; (3) excessive damages, showing prejudice; and (4) in giving and refusing instructions.

On the first assignment of error it may be noted that the court's order rendering the judgment found that the evidence of the value of the machinery converted would not warrant a recovery for more than $2,878.00. To this sum the rent due before conversion of the property (which rent had been tendered to plaintiff after suit was begun), $225.00, was added, including lawful interest on both items, which interest amounted to $186.00, making the total amount of the judgment $3,289. The balance of the rent due ($225.00) is not controverted; and if the evidence sustains the value of $2,878.00 for the machinery converted (if converted), interest could be lawfully calculated. Does the evidence justify a finding that defendant converted the property to its own use, and if so, does it further justify the value so found?

Wilson says that on February 14, 1923, he wrote to defendant asking for payment of rent for the preceding four months which was in arrears, and on the 16th of that month received an answer from Brady, the Secretary of defendant company, notifying him that the company had finished using the machinery, and asking him to take corporate stock in defendant company in part payment of the rent due. He wrote Brady advising of his inability to take the stock in part payment. He then went to the superintendent of defendant company, accompanied by other witnesses, to "check off" the machinery, and could not get him to check off and return the property which he directed to be delivered to the storage place on his 10th Street lot. Finally through Brady he arranged another meeting with the superintendent, but was prevented from keeping that engagement by having been called for jury service at Clarksburg. In the week prior to the opening of the theatre he again went to see Hawkins, the superintendent, in company with witnesses Wyatt and McIntire, when Hawkins was told the machinery belonging to Mrs. Wilson would be taken to the 10th Street lot. Hawkins set the following Thursday to make the check off. They came back as directed, but Hawkins was not there. They then went to Brady, and he informed them that he would 'phone Wyatt when the property would be checked off. This was never done. Not being able to get the property checked and delivered, or to get payment of rent in full for the time it was in use, he sued. Wyatt and McIntire corroborate most of the material portions of his testimony. Hawkins, while admitting that Wilson, McIntire and Wyatt came to see him on June 4th for the purpose of checking off the property, says that it was understood that Wyatt would come later but he never did so, and that he was never directed by any one to deliver the property to the 10th Street lot. The evidence on this point is in sharp conflict. It presented a jury question. We cannot say that there was a clear preponderance in defendant's favor, and the finding of the jury in respect to the conversion will not be disturbed. *Whelan* v. *Railroad Co.,* 70 W. Va. 442; Ency. Digest Va. & W. Va.

Cases, Cum. Sup. Vol. 5, page 24. By plaintiff's instruction No. 1 and defendant's instruction No. 7 the jury was instructed to the effect that if they believed that the machinery after termination of its use was to be returned to plaintiff at a place in the city designated by her, in as good condition as when rented less ordinary wear and tear and that defendant did not so return the machinery, without fault on the part of the plaintiff, she was entitled to recover the reasonable value of the property at the time it should have been returned; but if they believed that when defendant was through with the use of the same, it gave plaintiff notice to that effect and she failed or refused to notify defendant where to deliver the same, and defendant out of necessity stored the same in a proper and safe place and gave plaintiff notice of where it was stored, then she could not recover for any damage done the property after it was stored under these circumstances. The question of conversion was fairly submitted. Plaintiff could waive the tort and sue in assumpsit for the value of the property at the time of its conversion. *Maloney* v. *Barr,* 27 W. Va. 381; 26 A. & E. Ency. Law 714. Did the evidence justify a finding that the value of the machinery was $2,878.00 at the time of conversion? The contract between the Construction Company and defendant provided that it would not be effective until plaintiff agreed to let defendant use her machinery at the valuation agreed upon, which valuation was $3,400.00 and was so treated by defendant. She agreed and the contract became effective. To this valuation must be added the boiler later taken by defendant from her storage lot, on which plaintiff placed a value of $800.00 at the time when it should have been re-delivered. The difference between $4,200.00 which may reasonably be taken as the agreed value of the machinery at the inception of its use by defendant, and the sum of $2,878.00, ($1,322.00) would represent the ordinary wear. For the rental plaintiff received $984.25, to which must be added the $225.00 tendered as due, after suit was begun. F. C. Wilson, husband of the plaintiff and who had much experience with machinery of this character and who had used it in his contracting business, fixed the

value of the machinery at the time defendant had ceased to use it as follows: 4 derrick buckets $300.00; 1 Foote concrete mixer $500.00; 2 mounted 20 H. P. boilers $1,000.00; 1 hoisting engine and boiler $800.00; 2 sets of dies $25.00; 1,200 ft. ¾″ Manila rope $50.00; 600 ft. one-inch Manila rope $30.00; 2 one-inch steel blocks $8.00; 4 boxes of fittings and valves $100.00; 1 lot of galvanized cable $15.00; 1 Worthington pump $50.00; making a total of $2,878.00. Defendant did not attempt to estimate the value of the machinery as of the time it ceased using it. Wilson's evidence is uncontroverted. Defendant's evidence is to the effect that several items of the machinery and equipment claimed to have been on the job, were not there when the work was taken over. These articles were: Manila rope, 2 one-inch steel blocks, 2 sets of dies, 4 boxes of valves and fittings, galvanized cable, 4 derrick buckets, and 1 Worthington pump. On this point there is a sharp conflict in the evidence. All of these parts were seen at the building by workmen on the job at or after the time defendant took the work over; and the affidavit filed with defendant's superintendent on October 19, 1922, itemized all of these articles as belonging to plaintiff. Whether the articles were there and taken over by defendant was a jury question. Much of the evidence relates to the condition of the machinery and the damage by breakage, exposure, &c. Defendant says that it repaired the boilers, the breakage in other articles, and properly stored and cared for the property when not in use, and that it is practically in as good condition, depreciation by reason of ordinary wear and tear excepted, as when taken over; while plaintiff's witnesses say the property has been greatly damaged and some of it practically destroyed. To detail the conflicting evidence on the condition of the various units of the machinery would be of little importance, in view of the verdict. The evidence was sufficient upon which to base a finding that the reasonable value of the property when it should have been checked off and returned was at least $2,878.00. If there was a conversion, a fact which the jury must have found, for the verdict was in excess of the total

rent claimed, evidence that the property was not damaged would tend to make the value at the time of conversion greater than that proved by plaintiff.

Error is assigned because plaintiff's husband, F. C. Wilson, was allowed to testify in support of her claim for rent that the machinery was used more hours per day than the usual working hours in a day. He calculated the rent due on a basis of one-half of one per cent. per day on a valuation of $3,400.00 or $17.00 per day for the period between September 1, 1922 to February 14, 1923, the time which defendant had the use, not including the boiler which was not included in the valuation when the work was taken over by defendant. This amounted to $2,431.00. To this sum he added $1,215.50 for rental of the property each day claiming that the machinery was used sometimes 16 hours per day and sometimes 24 hours per day. He averaged the time of use as a "shift and one-half," meaning that the property was used eight hours (a day's work) and then another set of workmen took charge and worked another eight hours in order to complete the building. He charged rent for "over time," and the over time he averaged at four hours each day. From the total rent thus calculated, $3,646.50, he deducted the rent paid $984.25, leaving a balance due of $2,661.25. Defendant claims that under the contract a day meant 24 hours, and it had the right to use the machinery the full number of hours in each day if it chose to do so, without extra rent, and insists that it was error to allow evidence to go to the jury as a basis of claim for rental for over time; and much citation and argument is found in the briefs in respect to the meaning and proper interpretation of the phrase, "per day" in a contract of this character. Granting that defendant's contention is true, the error, if any, was harmless, for if any recovery for rent (except the $225.00 admitted to be due) was included in the verdict it was *less* than the rent claimed for the agreed rental per day, whether the hours of use were more or less than those intended by the contract. Defendant further alleges error because Mr. Vassar was permitted to estimate the first cost of the boiler looked at by

him on the Fairmont Theatre Company's lot, basing his estimate as of September, 1922. He estimated the market value of such a boiler at that time to be Thirteen to Fourteen Hundred Dollars. The value of the boiler at the time of its conversion was the point to be determined, not its value at the time it was taken on the job, but the first cost of personal property is proper data, generally, to enable the jury to determine its value after use.

Two instructions were given for the plaintiff, to one of which, instruction No. 1, defendant objected. This instruction told the jury, in substance, that if they believed the machinery and materials described were to be returned by defendant after its use under the contract, to plaintiff at a place in the city designated by her, in as good condition as when rented, less ordinary wear and tear, and if they further believed that defendant after ceasing to have use for the same, did not return the property to her, without fault upon her part, she was entitled to recover the reasonable worth of the property as of the time it should have been returned to her. The point of error is that the instruction ignores the duty on the part of plaintiff to accept the machinery and not abandon it when she was advised defendant had ceased to use it. The contract required defendant to return the property after it had ceased to use it, to plaintiff at a place to be designated by her within the city limits. She was not required to accept it elsewhere. If she had prevented its return, or had not designated a place in the city, or had refused to accept it, she could not recover. The jury was so told in the instruction by the phrase that if they believed the default of defendant "was not due to the fault of the plaintiff or her agent." Moreover, by defendant's instruction No. 7 the jury was told that if they believed from the evidence that when defendant was through with the machinery and equipment, it gave plaintiff notice to that effect and she failed or refused to designate a place within the city to which defendant should return the property, and that defendant then stored the property in a proper and safe place and gave her notice where it was stored, then defendant

would not be liable. We see no error in the giving of the instruction for plaintiff. It did not ignore the theory of the defense. The two instructions on the same point must be read together. Defendant offered seven instructions and all were given except Nos. 4 and 6, and error is predicated on their refusal. Instruction No. 4 would have told the jury that if they believed the property was in as good condition when defendant ceased using it as when defendant began using it, ordinary wear and tear excepted, then plaintiff could not recover for damages to the machinery. The suit was in assumpsit for the reasonable value of the machinery at the time defendant converted it to its own use, and not for damages done to it. Defendant's instruction No. 6, refused, would have told the jury if they believed from the evidence that the Engineering Company was using the machinery 24 hours each day at the time defendant took over the work, and assigned its contract to defendant with the assent of plaintiff, then plaintiff would be bound by the contract, and the day mentioned therein would be taken and considered a day of equal hours that the Engineering Company was working the machinery. There was evidence that a week or ten days before the Engineering Company turned over the work to defendant, it had worked the machinery more than one ''shift'' a day, and that plaintiff's husband knew that it was doing so; but we find no evidence of assent to such use upon her part; but whether she did assent, or whether defendant continued to work the machinery over time, is immaterial in view of the verdict, and defendant was not prejudiced by the refusal of this instruction.

On the controlling questions of fact there was conflict of evidence. We cannot say that the jury was not warranted in resolving these questions in plaintiff's favor. Nor can we say that the verdict is without sufficient evidence to support it, or against the decided weight and preponderance of the evidence, as was done in *Coalmer* v. *Barrett,* 61 W. Va. 237.

Defendant asserts that the damages were excessive. The measure of damages where property is converted is the reasonable value at the time of its conversion with interest from

conversion. Cooley on Torts, page 878; *Bank* v. *Huff and Cook,* 114 Va. 10; *Cecil* v. *Clark,* 49 W. Va. 459; 38 Cyc. 2092. Where damages are indeterminate, that is where they cannot be measured by an exact rule, the measure is left to the sound discretion of the jury and their finding will not be disturbed unless it indicates passion, prejudice, partiality or corruption. *Hunt* v. *DiBacco,* 69 W. Va. 449; *Kennedy* v. *Railroad Co.,* 68 W. Va. 589. However, the trial court came to the conclusion that the verdict was excessive as beyond the value of the property and rents proven, and there is no cross-assignment of error on that point. The verdict as reduced is not clearly excessive.

The judgment is affirmed.

*Affirmed.*