# CHARLESTON.

MORGAN LUMBER & MANUFACTURING CO. *v.* E. M. SURBER

(No. 5978)

Submitted October 12, 1927.    Decided October 18, 1927.

1. COMPROMISE AND SETTLEMENT—*Refusal to Instruct Jury to Find According to Result of Compromise, Computed by Party Based on His Construction of Contract on Which Question at Issue Depends, Held Proper.*

   It is proper to refuse an instruction to the jury to find in accordance with the result of a compromise computed by one of the parties and based on his construction of a contract, in dispute, and upon which the question at issue depends. (p. 312.)

   (Compromise and Settlement, 12 C. J. § 82.)

2. TRIAL—*Instructions Not Supported by Evidence Are Properly Refused.*

   Instructions are properly refused where there is no evidence tending to support the theory upon which they are based. (p. 312.)

   (Trial, 38 Cyc. pp. 1618, 1619.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by the Morgan Lumber & Manufacturing Company against E. M. Surber. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*J. Howard Hundley*, for plaintiff in error.
*Meldahl & Mauzy*, for defendant in error.

MILLER, JUDGE:

On the trial of this action in the circuit court the plaintiff recovered a verdict and judgment against plaintiff in the sum of $647.48, which was substantially the amount sued for, the balance on account alleged to be due plaintiff for lumber sold and delivered to the defendant.

With the view of building a small apartment and garage, the defendant requested L. F. Shannon, of the firm of Shannon and Gore, contractors and builders, to secure bids for the material necessary to be used in the structure. Shannon, with the plans and specifications furnished him by the defendant, went to plaintiff's plant and asked Mr. H. B. Shadle, plaintiff's treasurer and general manager, to furnish him a blanket bid on the lumber required by the specifications. Mr. Shadle, according to his own testimony and that of Mr. Shannon, replied that under no circumstances could he make a blanket bid on the rough lumber, and that at the time could not make a blanket bid on the finished lumber, for the reason that his men who took materials off the specifications were not available. Shannon insisted that he must have a blanket bid, and would have to go elsewhere for the lumber, though he would rather deal with plaintiff. Shadle says Shannon took the plans away with him when he left the office. Later, however, Shannon secured from J. A. Dunn, one of plaintiff's salesmen, a list of materials, with prices of each extended, which totaled $1,683.81.

The building was erected by Shannon and Gore, and the lumber used was all furnished by plaintiff, on the order of Shannon, or his superintendent, and the bills charged to the

firm.  After the completion of the building, Surber learned that plaintiff was about to file a lien on the building to secure the balance due on materials furnished.  He had at that time paid to plaintiff $2,000.00 on the account.  In order to relieve himself of having a lien on the property, he wrote plaintiff as follows:

"With reference to the material furnished by you in the construction of my house at 1512 Quarrier Street, in the city of Charleston, West Virginia, I wish to say that I shall be responsible to you for all materials furnished by you and used in the construction of said house as shown to be actually due you by a final check to be made by both your representative, L. F. Shannon, Harvey Crowder, and myself.  While I am informed that you have charged the said material to Shannon & Gore, I am perfectly willing to assume the payment of any amount actually due on the particular job herein mentioned."

A check up was made by the three gentlemen named in Surber's letter and H. J. Clancy, plaintiff's sales manager.  They found that all of the lumber charged to Shannon and Gore had been used in the building.  Surber then proceeded to determine what was due on the contract, by adding to the total of the list made by Dunn, the price of the rough lumber, some extras ordered, and the difference between the price of articles returned and the price of others ordered in lieu thereof, with the result that he found the account to amount to $2,126.27.  Having paid $2,000.00 on the contract, he tendered plaintiff the sum of $126.27, which was refused.  The amount of plaintiff's bills for materials furnished and charged to Shannon and Gore was $2,674.49, made up of $1,628.14, "Materials furnished on original estimates", and $1,046.34, "Extras".  In the "extras" is included $401.00 for the rough lumber, as to which there is no controversy.  The suit was for $674.49.

Defendant's contention that he owes plaintiff but $126.27 is based on his understanding that the list made up by Dunn and submitted to Shannon was a blanket bid for all the fin-

ished lumber called for in the specifications submitted to Shadle, and afterwards in the hands of Dunn when he made up the list. This list is headed: "Estimate for Shannon & Gore Building for Surber. Address United Cigar Bldg. Location 1512 Quarrier St. From the Morgan Lumber & Manufacturing Co. Please Examine this Estimate Carefully, as we Agree to Furnish Only the Articles Named and As Described."

Surber testified that he turned the plans and specifications for the building over to Shannon, requesting the latter to secure bids for the necessary materials; that Shannon's authority at the time was limited to securing bids; that Shannon afterwards came to him and reported that he had secured a bid for all the finished lumber for $1,628.24; that Shannon showed him no papers, but said he had a list of materials; that Shannon told him the bid was not in writing, that he had dealt with the Morgan Lumber Company so long that he did not feel it was necessary to get a bid in writing.

Shannon testified that he took the plans and specifications to Dunn, whether before or after he talked with Shadle does not clearly appear; that Dunn said he "could not make a blanket bid, that he was unauthorized to do so, or something like that"; and that he reported to Surber that Shadle would not make a blanket bid on the finished lumber. On cross-examination this witness testified: "A. Did you not tell Mr. Surber that Mr. Shadle had given you a bid on the finished lumber, but that he would not give you a bid on the rough lumber? A. I took it that the list that they prepared and handed me was a bid. Q. You had that understanding? A. Yes, I had that understanding. Q. Did you advise Mr. Surber that you had a bid on the finished lumber? A. I took it that was a bid. Q. You so advised Mr. Surber, did you not? A. I suppose I did, I do not know."

Dunn testified that Shannon came to him "with a set of plans covering a building, garage and apartments over it. Mr. Shannon left them with me and left them simply to take them off. So I told him I would take them off, and he says, 'Mr. Shadle has promised me a blanket bid on this.' I went in and took the plans and the estimate in to Mr. Shadle and

asked him if he was giving Mr. Shannon a blanket bid on the Surber job. Mr. Shadle said, 'No, I told Mr. Shannon I wouldn't give him a blanket bid on it.' '.' Dunn said that a few days later he gave Shannon the list he had made, but that nothing further was said about a blanket bid. He further testified that he had no authority to make blanket bids, and had never made one in his life.

The materials furnished by plaintiff and used in the building appear to have been ordered by Crowder, Shannon & Gore's foreman, who superintended the construction of the building, without any reference to the list made by Dunn. Crowder says he did not see the list or estimate, and only ordered materials as he needed them.

Defendant's first contention is that he was entitled to a peremptory instruction to the jury to find for him except as to the $126.27 tendered, on the theory that plaintiff is bound by its acceptance of defendant's offer of compromise, and the result reached. But, it appears that the only definite result of the check up was to establish the fact that all the materials for which plaintiff claims pay were actually used in the building. The result of the computation, which seems to have been made by Shannon and Surber, using Clancy's figures for the difference between the materials cancelled and those substituted, was based on the assumption that Dunn's list was a blanket bid for the finished lumber.

The evidence does not establish a blanket bid as a matter of law. The list or estimate made by Dunn on its face purports to be an "estimate" only; and reads in part, "we agree to furnish only the articles named and as described". Shannon says he "understood" it to be a bid, and "supposes" he so informed Surber; but Surber testified that Shannon told him he had a bid "not in writing", and a list of materials. Defendant was evidently not relying wholly on the estimate or list, but on Shannon's statement that he had an oral bid. Why Shannon "understood" the estimate was a blanket bid does not appear. Dunn told him he could not make a blanket bid, and says he did not make one. Shadle denies giving anyone a blanket bid on the finished lumber. The peremptory instruction offered was properly refused.

Defendant's second theory is that 'if plaintiff bases recovery on the relationship of agency between defendant and Shannon, the limitation of Shannon's authority to secure a blanket bid or go elsewhere for the lumber was well known to Shadle, and that the delivery of the estimate to Shannon by Dunn, in view of the facts known by Shadle, was sufficient to lead Shannon and defendant to believe that the amount named in the estimate was a blanket bid on all the finished lumber.

It may be true that Shadle understood that defendant wanted a blanket bid, and that Shannon had no further authority to contract for his principal. But in what way did anyone lead Shannon or Surber to believe and understand that the sum total of the estimate, $1,628.24, was a blanket bid for all the finished lumber needed to fill the plans and specifications presented by Shannon? If defendant was misled, it was by or through Shannon, for he had no direct negotiations with anyone connected with the plaintiff company. Shadle swears he made no bid, as does Dunn; and no one says they did. Shannon does not say that anyone gave him a bid, only that he "understood" the list handed him was a bid; and he does not use the term "blanket bid" in this connection. And when asked if he at any time represented to Mr. Surber that he had gotten a blanket bid for the finished material, he answered: "I do not think I named it a 'blanket bid'. I think in my judgment that Mr. Dunn had taken off pretty fully and completely the materials from this plan and the specifications. That is what I thought about it." If Shannon in fact did understand that the estimate was a blanket bid, it was not due to any representation by Shadle or his agents, but to his own error in assuming it to be such. He was told by Dunn himself that the latter was unauthorized to make blanket bids. He had full notice of Dunn's authority, and with that knowledge made no inquiry about a blanket bid at the time he received the estimate or list of materials. We are of opinion that defendant's instructions on this question were properly rejected. They would have submitted to the jury the question of whether or not plaintiff or his agents misled Shannon and Surber to

believe that the $1,628.24 was a blanket bid for the finished lumber, based only on Shadle's knowledge of Shannon's limited authority to secure a blanket bid or to go elsewhere for the lumber. The real question at issue was whether the lumber furnished by plaintiff and used by defendant was sold under a definite contract, not what one of the parties might have understood or inferred from collateral facts or circumstances within his own knowledge. It appears that Dunn, because of inexperience, included in his estimate only about three-fifths of the materials necessary to satisfy the plans and specifications, and that Shannon took a chance on the estimate being in full of the requirement and reported to defendant accordingly. Shadle admits that the estimate amounted to a bid for the materials listed; and it appears that these materials were furnished and billed for the prices named in the estimate. No doubt defendant was misled, but through his own agent, not the plaintiff or its agent or employee.

Finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*