# CHARLESTON.

STATE OF WEST VIRGINIA, *Which Sues, etc.*, CONNELLSVILLE BY-PRODUCT COAL COMPANY, *a Corporation* v. CONTINENTAL COAL COMPANY *et al.*

(No. 6588)

Submitted October 1, 1930.    Decided October 28, 1930.

558

*Chas. A. Goodwin,* for plaintiffs in error.

*Frank C. Haymond* and *Frank Cox,* for defendant in error.

MAXWELL, JUDGE:

This is a suit on the injunction bond of $12,500 given in the circuit court of Monongalia County in the chancery cause of *Continental Coal Co.* v. *Connellsville By-Product Co. et al.,* later appealed to this Court and reported in 104 W. Va. at page 44. Continental Coal Company and its sureties on the bond prosecute error to a judgment on a verdict against them for the full amount of the bond.

We cannot consider this case on the merits because the record is not properly before us. A transcript of the evidence was not certified by the court reporter and the trial judge and embodied in a bill of exceptions within thirty days after the adjournment of the term of court at which the judgment was rendered, as required by section 9 chapter 131, Code. Several bills of exceptions, numbers 3 to 9, inclusive, purporting to embody parts of the evidence were properly signed and sealed within the thirty day period, but the evidence as a whole was not. As to the whole evidence the shorthand notes (not transcribed) of the court reporter were certified by him as correct, certified by the trial court as correct "as the same appears from the certificate of the official reporter hereto attached," and embodied in bill of exceptions number 1, signed and sealed within thirty days after the term. All of the said bills of exceptions were attempted to be made parts of the record by proper order entered in due time.

The court reporter says that the reason he did not transcribe and certify the whole evidence within thirty days after adjournment of the circuit court was because of press of official duty in reporting trials in the criminal court of Marion County which had convened prior to the circuit court adjournment.

It is urged by the able counsel for the defendants: "The statute, Section 9, Chapter 131, does not in terms provide that the record shall be transcribed in longhand or in typewriting"; and that to hold otherwise "the appellate court must read into the section by construction a mandatory provision requiring

the record to be transcribed in longhand or typewriting and certified within the statutory period in order to be an official transcript, regardless of the fact appearing in the certificate of the stenographer, that by reason of circumstances over which these petitioners had no control, it was physically impossible for him to do so." The statute makes no exceptions to meet unusual or fortuitous circumstances. As a practical matter, arrangements can be and are ordinarily effected by reason of which no hardship results from the thirty day limitation to a party desiring to prosecute a writ of error.

It is true, as contended by counsel, that the statute, Code, chapter 131, section 9, does not expressly require that the shorthand notes of the evidence shall be transcribed into longhand or typewriting, but the statute does require that "the court shall certify all the evidence touching such question" (that is the question sought to be reviewed), "and the judge shall sign any such bill of exceptions (if the truth of the case be fairly stated therein), and it shall be made a part of the record in the case, and the whole of the evidence so certified shall be considered by the court of appeals both upon the application for and hearing of the writ of error or supersedeas." We are impressed that the language of the statute carries the necessary implication that shorthand notes of evidence must be transcribed before an attempt at certification is made. How else could the trial judge know what he was certifying unless he was so proficient in stenography that he could read the reporter's notes or unless he had the reporter to read his notes at length to him? The improbability of the first and the impracticability of the second eliminate these contingencies from serious consideration. As already noted, it will be observed that the judge who presided in the trial of this case did not undertake to certify the evidence. He merely certifies that the stenographic report is correct and complete "as the same appears from the certificate of the official reporter hereto attached." And again, how could the appellate court make use of "evidence so certified," as required by the statute, if in stenographic characters only? In *Tracy's Adm'rx.* v. *Carver Coal Co.*, 57 W. Va. 587, where the court had so-called skeleton

bills of exceptions under consideration, it was held in syllabus one that any paper or document intended to be copied into the bill by the clerk "must itself at the time of the signature of the bill be in existence, written out and complete." And in syllabus four there is the holding that where "evidence has not been actually transcribed, * * * it cannot, after the expiration of thirty days since the adjournment of the term at which final judgment was rendered, be certified and identified so as to become a part of the bill." The matter is lucidly discussed by JUDGE SANDERS in that case. Our statute contemplates a certification of a transcript of the evidence by both the court reporter and the trial judge.

Bill of exceptions number 2 covers the instructions. No point of error is based thereon. Points of error predicated on matters set forth in bills number 3 to 9, inclusive, cannot be considered. Number 3 sets forth a long hypothetical question which was propounded to each of several lawyers as to what would be a reasonable attorneys' fee to be charged by counsel for Connellsville By-Product Coal Company for services rendered it in connection with the aforementioned chancery suit on the basis of such services as detailed in said question. The challenge to the question is that in its recital of facts as to the matters actually involved in said chancery suit, it is far too broad. Maybe so, but how can we determine that there was prejudice to the defendants because of the use of such question in the absence of the answers of the witnesses? Bill of exceptions number 3 does not set forth the answers, nor do the answers elsewhere properly appear. A question may be ever so bad but ordinarily there is no prejudicial error in its mere asking. The error generally lies not in the question itself and alone, but in the answer which the erroneous question adduces. Not infrequently a bad question is rendered harmless by the witness answering "I don't know." So, we say, even conceding that the hypothetical question set forth in bill of exceptions number 3 is subject to the criticism leveled at it, the court cannot determine whether there was prejudicial error, in the absence of the answers.

Bills numbers 4 to 9, inclusive, set forth excerpts from the

testimony of several different witnesses. These excerpts properly serve the purpose of directing attention specifically to the matters therein severally set forth, but none of said matters is such that it can be considered otherwise than in connection with the whole evidence.

"In reviewing a judgment in an action at law, upon a writ of error, where the evidence is not made a part of the record, the court will not consider assignments of error involving a consideration of the evidence, but will affirm the judgment." *Dudley* v. *Barrett*, 58 W. Va. 235.

The judgment is affirmed.

*Affirmed.*