CHESAPEAKE & OHIO RAILWAY COMPANY *v.* GROVER C. ALLEN *et al.*
(No. 7151)

Submitted January 27, 1932.    Decided February 2, 1932.

*Fitzpatrick, Brown & Davis* and *McDaniel Purcell,* for plaintiff in error.

*J. W. Maxwell,* for defendant in error.

HATCHER, PRESIDENT:

This is a condemnation proceeding. Several years ago Grover Allen became the owner of a tract of about fourteen acres near the Big Bend tunnel on the C. & O. railroad. He was desirous of building a house within a few feet of his boundary line, and acquired from a neighbor about two-thirds of an acre adjoining, for use as a back yard. The house was built with stone walls and is estimated to háve cost about $9,500. Two years ago he added 29 acres to his boundary, all of which is valuable only for farming purposes. In this proceeding the railroad company condemns practically all of his back yard (0.653 acre) for the purpose of constructing another tunnel some 140 feet below the surface. The jury alowed and the court confirmed $6,800, for the strip taken and for damages to the residue of Allen's property.

It is a settled rule that opinion evidence must be based on "a special practical acquaintance with the immediate line of inquiry." Wharton, Evidence, sec. 439; 22 C. J., subject Evidence, sec. 604; *Rr. Co.* v. *Coal Co.,* 75 W. Va. 423, 444, 83 S. E. 1031. In disregard of that rule (a) B. Z. Carden, a witness for Allen, though admitting ignorance of the values of the strip taken and of the house, was permitted to express the opinion that Allen's property would be damaged $7,500 or $8,000 by the taking, because, in the language of the witness, he "wouldn't consider the property worth very much,

afterwards, after they had taken that much of the back of his lot, back of his house.' (b) Without showing any knowledge of market values, Allen was permitted to testify that the property was worth (to him) $17,000 before the taking, and $7,000 afterwards. (c) N. T. Payne, a witness for Allen, who had done ''right smart'' blasting while running a steam shovel in road construction work, and who had observed the effect of blasting *in a tunnel,* at Greenwood, Virginia, was permitted to say that in his opinion the blasting necessary in driving the tunnel, even though done in a skillful manner would break the walls of Allen's house. The witness did not give the distance below the surface of the Greenwood tunnel, and he did not state that he had observed the effect of blasting on surface structures in the proximity of the Greenwood tunnel. Therefore, he failed to qualify for the opinion he gave. We see no material error in the evidence of Allen's other witnesses. Inconsistencies appear, but they are jury questions.

An instruction given at the request of Allen informed the jury that it might consider ''the marketable possibilities'' of the residue of his land both before and after taking. As was said in the opinion in *Monongahela, etc.* v. *Development Co.,* 101 W. Va. 165, 176-7, 132 S. E. 380, 384: ''Juries should be impressed that a landowner cannot in such case realize on future possibilities exceept insofar as such expectancies affect its present market. He is entitled to a consideration of all advantages which the land possesses, but it is the present value alone of such advantages that must be determined. It would be manifestly improper to give to land as a present valuation a price which can actually be obtained only after a considerable period of time.'' Had the phrase ''marketable possibilities'' been restricted and explained in the above manner, its use would have been permissible; but we are of opinion that standing alone, it was calculated to mislead the jury. See generally *Power Co.* v. *Brotherton,* 90 W. Va. 155, 160, 110 S. E. 546.

The instruction also told the jury that in assessing damages to the residue, it should take into consideration ''the accessibility of the property to an adequate or inadequate

484

water supply for its enjoyment both before and after the taking." A line of the strip taken ran within 1.2 feet of the center of the basin of a constant spring which Allen used occasionally, and upon which he depended in droughts. The line left about two-thirds of the upper part of the basin on his land. The one-third of the basin is the only water affected by the taking. There was no evidence of the dimensions of the basin, or of the adequacy or inadequacy of the water supply by the two-thirds not taken, or of the feasibility of enlarging the basin on Allen's land. But the jury viewed the premises, and we cannot say that submission of the above question was necessarily error.

The railway company was not permitted to show the assessed valuation for taxation of Allen's property. The Code no longer makes such valuation evidence. It is common knowledge that assesors ordinarily do not assess property at its true and actual value. Consequently, rejection of the assessment was not error.

Allen objects to a consideration of errors, on the ground that they were not pointed out specifically to the trial court. That requirement is obviated by Code 1931, 56-6-35. The railway company noted objections on the record to the rulings now alleged to be erroneous. That was sufficient.

The errors pointed out herein are grave and are calculated to have misled the jury. Therefore we reverse the judgment of the trial court and award the railway company a new trial.

*Reversed.*