TENNESSEE GAS TRANSMISSION COMPANY, *a Corporation*

*v.*

W. B. Fox, *et al.*

(No. 10200)

Submitted January 17, 1950. Decided March 21, 1950.

*Campbell & McNeer, Charles F. Bagley, Jr.,* for plaintiff in error.

*Scott & Ducker, P. W. McCreight,* for defendants in error.

HAYMOND, JUDGE:

Having been unable to agree with the landowners upon the amount of compensation, the applicant, Tennessee Gas Transmission Company, a corporation, instituted in the Circuit Court of Cabell County this proceeding in eminent domain against the defendants, W. B. Fox and Ella D. Fox, his wife, to obtain a perpetual easement for a twenty four inch pipe line upon a tract of thirty eight acres of farm land owned by the defendants in that county for the transmission of natural gas. The length of the easement taken, which passes through two separate small sections of the thirty eight acre tract, is 906 feet; its width varies from approximately twenty five to fifty feet at different places on the land; and the total area of the two sections occupied by the easement is .86 of an acre of land. The applicant having filed its petition and a bond in the penalty of $1,000.00, an order permitting possession and appointing commissioners was entered on May 15, 1948. An award of compensation in the amount of $236.25 was made and reported by the commissioners on May 21, 1948. The defendants filed exceptions to the report and the question of compensation and damage was submitted to a jury of freeholders. The jury returned a verdict of $850.00 as compensation for the easement and damage to the residue of the land. On June 11, 1949, the circuit court overruled the motion of the applicant to set aside the verdict and award a new trial and entered judgment on the verdict. To that judgment this writ of error was granted by this Court upon the petition of the applicant.

The applicant took possession of the easement and installed a twenty four inch transmission pipe line. As constructed the top of the pipe is two feet, and the bottom of the pipe is four feet, below the surface of the land. The line is built of metallic pipe, five sixteenths of an inch in thickness, in a solid, welded unit, with no flanges or couplings. The pipe is tested to withstand pressure of 1225 pounds and will carry a pressure of about 800 pounds

on the easement. It is treated and prepared against corrosion and the line is capable of lasting for an indefinitely long period of time. The restrictions imposed upon the easement permit the landowners to make full use of the surface of the land except to the extent that such use will unreasonably interfere with the right of the applicant to use the easement for the purpose for which it is acquired. At the time of the trial, when the jury visited and viewed the premises, the line was not in use but the work of installing it had been completed except that the surface above the line had not been graded and smoothed.

Upon the trial two witnesses, Brady, a member of the county court and a hardware dealer, and Frazier, a nearby landowner, and the defendant W. B. Fox, testified in behalf of the landowners as to the value of the easement taken and the damage to the residue of the land. On that question the applicant offered the testimony of two witnesses, Varnum, a real estate dealer, and Saunders, the county assessor. Brady had had some experience in appraising real estate values and had visited and examined the thirty eight acre tract of land the day before he testified. He had never bought or sold any land in the vicinity of the land of the defendants and did not know of any sales of land in that locality. Frazier had owned and lived on land near the thirty eight acre tract for about seventeen years, was acquainted with land values in that section, and had seen the land of the defendants. He did not, however, know of any sales of real estate in that neighborhood. The defendant W. B. Fox, the owner of the land in fee, had owned and lived on the tract for thirty years.

Brady placed a value upon the .86 of an acre occupied by the easement of $150.00 immediately before the easement was taken and stated that the land occupied by the easement had "very little" value immediately afterward. The applicant objected to the value of $150.00 before the easement was taken but did not object to the statement of "very little" value for that part of the land immediately after the easement was taken. The witness also stated, over objection by the applicant, that the value of the

residue of the tract immediately before the easement was taken was $5,000.00 and, without objection, that its value immediately afterward was from $3,500.00 to $3,800.00. Frazier testified, over objection by the applicant, that the value of the .86 of an acre, immediately before the easement was taken, was $140.00 to $160.00 and, without objection, that its value immediately afterward was "not over ten per cent." He also stated, over objection by the applicant, that the value of the residue of the land immediately before was $4,500.00, and that its value immediately after was "around $2,500.00 to $3,000.00." Fox, the landowner, testified, over objection by the applicant, that the value of the .86 of an acre, immediately before the easement was taken, was $250.00, and that its value immediately afterward was $25.00; and, without objection, that the value of the residue immediately before was $5,000.00 and immediately after was $2,500.00. The witness Varnum, who testified in behalf of the applicant, valued the .86 of an acre at $60.00 immediately before the easement was taken and at $30.00 immediately after, and the residue at $2,220.00 immediately before and at $2,120.00 immediately after. The value testified to by each of these witnesses represented their opinion of the market value of the land involved. Saunders, the assessor, the other witness on value offered by the applicant, testified, without objection, that the assessed value of seventy eight acres of land which included the thirty eight acre tract was $970.00 for the year 1947. Upon this evidence and a view of the land the jury returned the verdict of $850.00.

During the cross-examination of Thompson, a pipe line superintendent of the applicant and a witness in its behalf who testified about the character and the construction of the pipe line on the easement, the attorney for the defendants inquired if there was "a certain amount of danger to a proximity to this big line." To this question the witness replied that he had worked around pipe lines for twenty years and that he did not "worry about it." Asked about the possibility of a break in a transmission pipe line he stated that "there is always a possibility." He also

stated, in answer to a question whether he had been present when any break had occurred in any pipe line of the company, that he had not been present on any such occasion but that there had been one break in another line of the applicant. There was no objection by the applicant to any of these questions or answers. During the examination in chief of the witness Frazier, who testified in behalf of the defendants, he was asked if, in arriving at the values given by him, he had considered "the question of danger" and his answer was: "As far as I am concerned, it is very dangerous. I wouldn't want to live within a thousand feet of the line." Upon objection the court instructed the jury "to disregard the voluntary statement of the witness with regard to the danger of the line." The foregoing statements of these two witnesses were the only references to any element of danger during the trial. They are here set forth because they constitute the basis of an instruction offered by the applicant which the court refused to give and which is dealt with later in this opinion.

In cross-examining the witness Varnum, produced by the applicant, the attorney for the defendants, in referring to the pipe line, asked this question: "It brings gas clear from Texas to be delivered at one point in this state for distribution elsewhere?" This question was objected to by the applicant. The court overruled the objection but the witness gave no answer to the question.

At the conclusion of the evidence the applicant submitted four special interrogatories and two instructions, designated as No. 1 and No. 2. The court gave instruction No. 1 but, upon objection by the defendants, refused to give instruction No. 2 and each of the special interrogatories.

By its assignments of error the applicant seeks reversal of the judgment on these grounds: (1) The witnesses Brady and Frazier were not qualified to testify to the value of the easement or the value of the residue before or after the easement was taken; (2) the evidence introduced by the defendants related to the value of the land

occupied by the easement and not to the value of the easement itself; (3) the special interrogatories and instruction No. 2, offered by the applicant and refused by the court, should have been given; (4) the question propounded by the attorney for the defendants relating to the delivery by the pipe line of gas in this State, for distribution elsewhere, was prejudicial to the applicant; and (5) the verdict of $850.00 is excessive.

In a proceeding in eminent domain the value of the land taken and the damage to the residue are necessarily matters of opinion. *State Road Commission* v. *Moss,* 108 W. Va. 267, 150 S. E. 722. Value and damage may always be established by opinion evidence. 18 Am. Jur., Eminent Domain, Paragraph 355. Such evidence is usually admitted when given by persons who are not strictly experts, but who, by residing or doing business in the vicinity of the land in question, have become familiar with land values and are better qualified to form an opinion with respect to value than citizens in general. The rule which recognizes the admissibility of evidence of the value of land given by a person who knows the property and its value is liberally applied when farm land is involved, for the reasons that other evidence is not always easily obtained and that persons who live in the same neighborhood, if acquainted with the physical surroundings and the character of the property, are able to judge value with reasonable accuracy. 18 Am. Jur., Eminent Domain, Paragraph 355. A witness who is acquainted with land, its location, its character and its adaptability to particular purposes, may give his opinion as to its value. Though such a witness is not an expert, and is not regarded as such, his evidence relating to value is competent and its weight and its credibility are questions for the jury. *Virginian Power Company* v. *Brotherton,* 90 W. Va. 155, 110 S. E. 546. "A witness need not be qualified in the highest degree, nor in any particular degree, to make his opinion on a question of value or quantity admissible. *Comstock* v. *Droney Lumber Co.,* 69 W. Va. 100. It suffices that he has some peculiar qualification, more knowledge of the

subject than jurors are supposed ordinarily to have." *Cochran* v. *Craig*, 88 W. Va. 281, 106 S. E. 633. In *State Road Commission* v. *Moss*, 108 W. Va. 267, 150 S. E. 722, a number of witnesses, each of whom appears to have possessed only slight qualifications as to the value of the land involved, testified and gave their opinions relating to its value. On that point this Court said: "While the opinions here given were not from experts, strictly speaking, they were admissible for what they were worth. This rule is liberally applied in condemnation of farm lands. 42 L. R. A. 767, note. This rule was applied in *Power Co.* v. *Brotherton*, 90 W. Va. 155; and in *Guyandotte, etc.* v. *Buskirk*, 57 W. Va. 417. The weight of all such evidence is for the jury, and they are not bound to follow the estimates given in the opinions." See also 18 Am. Jur., Eminent Domain, Paragraph 355. In *Guyandot Valley Railway Company* v. *Buskirk*, 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785, this Court held, in Point 5 of the syllabus, that "The opinions of persons residing near the property and who have known it for a considerable period of time, though not dealers in real estate nor specially informed as to prices, are admissible evidence on the question of its value." Generally, if a witness has some qualifications with relation to the matter as to which he undertakes to testify, he should be permitted to give his opinion. *Kay* v. *Glade Creek and Raleigh Railroad Company*, 47 W. Va. 467, 35 S. E. 973; *Cincinnati Gas Transportation Company* v. *Wilson*, 70 W. Va. 157, 73 S. E. 306; *Buckhannon and Northern Railroad Company* v. *Great Scott Coal and Coke Company*, 75 W. Va. 423, 83 S. E. 1031; *Kerr* v. *Clinchfield Coal Corporation*, 169 Va. 149, 192 S. E. 741. Whether his qualification to state an opinion is sufficiently established is a matter which rests in the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused. 32 C. J. S., Evidence, Paragraph 458b; *Lutz* v. *Allegheny County*, 327 Pa. 587, 195 A. 1; *Brown* v. *Borough of Castle Shannon*, 318 Pa. 363, 178 A. 678; *Byrd* v. *Virginian Railway Company*, 123 W. Va. 47, 13 S. E. 2d 273; *State* v. *Brady*, 104 W. Va. 523, 140 S. E. 546. When

it appears that a witness has even slight qualifications, it is not error to permit him to give his opinion. *Lutz* v. *Allegheny County,* 327 Pa. 587, 195 A. 1. Under the above cited authorities it is clear that the witnesses who testified in behalf of the defendants, including the defendant W. B. Fox, in relation to the value of the land taken and the damage to the residue, were sufficiently qualified and that their evidence on that question was competent. The opinion evidence of certain witnesses, condemned as incompetent by this Court in *Chesapeake and Ohio Railway Company* v. *Allen,* 111 W. Va. 481, 163 S. E. 22, and in *Buckhannon and Northern Railroad Company* v. *Great Scott Coal and Coke Company,* 75 W. Va. 423, 83 S. E. 1031, was rejected because they were clearly not qualified to express an opinion concerning the matters about which they testified. For that reason the holdings of those cases, cited and relied upon by the applicant, do not apply to the testimony of the witnesses who testified in behalf of the defendants in relation to the market value of the land.

On the question of the value of the easement taken, the witnesses in behalf of the defendants first gave their opinion of the value of the .86 of an acre covered by the easement immediately before it was taken and then their opinion of its value immediately afterward. The applicant complains of the evidence of the value of the land before the easement was taken on the ground that it indicated its fee simple value instead of the value of the interest less than a fee represented by the easement. This contention is not well founded. By expressing their opinion of the value of the land covered by the easement immediately before it became subject to it and their opinion of its value immediately afterward, they necessarily gave their opinion of the value of the interest taken by the easement and the damage to the residue of that part of the land occupied by it, and their testimony in that respect constituted their opinion of the compensation to which the landowners were entitled for the easement taken and the damage to the residue of the sections of the land on which the easement is located. This testimony of the wit-

nesses produced by the defendants together with their separate testimony relating to the damage to the residue of the thirty eight acre tract resulting from the easement represented their opinion as to the amount of compensation and damage to which the landowners were entitled and is in compliance with the requirement of the statute. Code, 1931, 54-2-9, as amended by Section 9, Article 2, Chapter 28, Acts of the Legislature, 1933, Regular Session. No benefits derived from construction on or use of the easement were shown or claimed by any of the parties, and the opinion evidence of the witnesses who testified in behalf of the defendants, as well as that of the witnesses produced by the applicant, presented in the same manner, was admissible for what it was worth on the question of compensation for the easement and the resultant damage to the land occupied by it and to the residue of the tract. *Cincinnati Gas Corporation Company* v. *Wilson,* 70 W. Va. 157, 73 S. E. 306; *Guyandot Valley Railway Company* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785; *Kay* v. *Glade Creek and Raleigh Railroad Company,* 47 W. Va. 467, 35 S. E. 973. The true measure of compensation to which the landowner is entitled for an easement in his land and for damage to the residue in a proceeding in eminent domain, is the market value of the easement and the damage to the residue of the land occupied by it and the difference between the market value of the residue of the land not so occupied immediately before and immediately after the easement is taken, without regard to benefits when, as here, no benefits are derived from construction on or use of the easement and that question is not presented or involved; and the market value of the easement and the damage to the residue of the land occupied by the easement may be established by the difference between the market value of the land occupied by the easement immediately before and immediately after the easement is taken. See Code, 1931, 54-2-9, as amended by Section 9, Article 2, Chapter 28, Acts of the Legislature, 1933, Regular Session *State of West Virginia by the State Road Commission* v. *Evans,* 131 W. Va. 744, 50 S. E. 2d 485; *Strouds Creek and Muddlety Railroad Company* v. *Herold,*

131 W. Va. 45, 45 S. E. 2d 513; *State of West Virginia by the State Road Commission* v. *Boyd*, 129 W. Va. 715, 41 S. E. 2d 665; *State of West Virginia by the State Road Commission* v. *Sanders*, 128 W. Va. 321, 36 S. E. 2d 397.

The special interrogatories were properly refused. One of them, No. 4, obviously by inadvertence, related to an improved highway instead of the easement and for that reason was entirely irrelevant. Interrogatory No. 1 requested the jury to find the market value of the easement; No. 2, the market value of the residue immediately before the land occupied by the easement was taken; and No. 3, the market value of the residue immediately after the land occupied by the easement was taken. The obvious purpose of these interrogatories was to require the jury to specify each item considered by it in arriving at the amount determined as compensation for the easement and damage to the residue. The submission of special interrogatories is in the discretion of the trial court and this discretion, though subject to appellate review, will not be disturbed unless plainly abused. *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *The County Court of Mingo County* v. *Chattaroy Coal Company*, 105 W. Va. 321, 142 S. E. 430; *Lovett* v. *Lisagor*, 100 W. Va. 154, 130 S. E. 125; *Richards* v. *Riverside Iron Works*, 56 W. Va. 510, 49 S. E. 437; *Penisular Land Transportation and Manufacturing Company* v. *Franklin Insurance Company*, 35 W. Va. 666, 14 S. E. 237; *Wheeling Bridge Company* v. *Wheeling and Belmont Bridge Company*, 34 W. Va. 155, 11 S. E. 1009; *Kerr* v. *Lunsford*, 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668. The issues in connection with the determination of compensation and damage are not numerous or complicated and the separate amounts must be included in the aggregate amount of the general verdict. Where the issues are few and not complicated, and it is apparent that special verdicts would not assist the jury in arriving at a correct conclusion, the refusal of the trial court to submit special interrogatories to the jury does not constitute an abuse of its discretion. *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *Bartlett* v. *Mitchell*, 113 W. Va. 465, 168 S. E. 662; *Lovett* v. *Lisagor*,

100 W. Va. 154, 130 S. E. 125. The situation here is different from that which existed in *Pennington* v. *Gillaspie*, 66 W. Va. 643, 66 S. E. 1009, cited by the applicant, in which this Court held that it was error for the trial court to refuse to submit to the jury a special interrogatory relating to the amount included in the verdict for actual damages or, in the alternative, the amount included for exemplary damages. Unlike the case at bar, the *Pennington* case involved exemplary damages, which must bear some reasonable proportion to the actual damages awarded; and in a case of that type special interrogatories which specify the amount of the actual damages or the amount of the exemplary damages are of course proper. *Pennington* v. *Gillaspie*, 66 W. Va. 643, 66 S. E. 1009.

Instruction No. 2, offered by the applicant and refused by the court, would have told the jury, in substance, that in ascertaining the damage to the residue, it should exclude as an element of damage any danger "that allegedly depreciates" such value which is "not real, imminent and reasonably to be apprehended and not remote or merely possible." The instruction, though ineptly drawn and somewhat confusing in the form submitted, perhaps states the correct principle of law that only danger which is real, imminent, and reasonably to be apprehended, and not remote or merely possible, may be considered in the ascertainment of damage which will lessen the value of the residue. The evidence which was admitted in this proceeding, however, did not indicate any danger whatever which would impair or depreciate the value of the residue of the portion occupied by the easement or the residue of the thirty eight acre tract of land. The only evidence admitted on that point consisted of the possibility of a break in the transmission pipe line, a break in another line about which a witness for the applicant had knowledge, which occurred when he was not present, and his answers to questions which suggested the possibility of breaks or danger in which the witness stated that there was always the possibility of a break but that he did not "worry" about any danger from a pipe line of the character

of the pipe line constructed on the easement. The only reasonable inference to be drawn from this evidence is that no danger exists because of the pipe line of the applicant. The answer to a question relating to the element of danger, propounded to a witness for the defendants, that "As far as I am concerned, it is very dangerous. I wouldn't want to live within a thousand feet of the line", was excluded, and the jury was instructed to disregard that statement of the witness. The court, by excluding the answer, also excluded the question. 64 C. J. 222. The statement of the witness, not being evidence, could not, of course, form any basis for the rejected instruction. As there was no evidence to support the instruction, it was properly refused. *Morgan Lumber and Manufacturing Company* v. *Surber,* 104 W. Va. 308, 140 S. E. 12; *Neal* v. *City of Bluefield,* 105 W. Va. 201, 141 S. E. 779; *Cooper* v. *Anheuser Busch, Inc.,* 123 W. Va. 63, 13 S. E. 2d 276; *Adkins* v. *Raleigh Transit Company,* 127 W. Va. 131, 31 S. E. 2d 775. See *Wright* v. *Valan,* 130 W. Va. 466, 43 S. E. 2d 364; *Stogdon* v. *Charleston Transit Company,* 127 W. Va. 286, 32 S. E. 2d 276; *Jones* v. *Smithson,* 119 W. Va. 389, 193 S. E. 802. The applicant insists that the answer of the witness, quoted above, though it was stricken and the jury was instructed to disregard it, was prejudicial. This position is not well taken. Upon review the appellate court must presume, in the absence of anything to the contrary, that the jury obeyed the instruction of the court and refused to consider the stricken answer of the witness. 3 Am. Jur., Appeal and Error, Paragraph 951; *Wade* v. *Peebles,* 164 Va. 479, 174 S. E. 769. See also *Brogan* v. *Union Traction Company,* 76 W. Va. 698, 86 S. E. 753; *Norfolk and Western Railway Company* v. *White,* 156 Va. 243, 163 S. E. 530; *Briscoe* v. *Parker,* 145 N. C. 14, 58 S. E. 443; *Wallace* v. *Wallace,* 85 Mont. 492, 279 P. 374; 66 A. L. R. 587.

During the cross-examination of a witness offered by the applicant with reference to the transportation of gas by it, the attorney for the defendants propounded this question: "It brings gas clear from Texas to be delivered

at one point in this state for distribution elsewhere?" The question was objected to on the ground that it misstated the facts as testified to by a prior witness for the applicant. The attorney for the defendants answered the objection with this statement addressed to the attorney for the applicant: "That was the testimony by your own engineer." The attorney for the applicant replied: "I challenge the record on that." The court overruled the objection and the applicant noted its exception to the ruling of the court. The witness made no answer to the question and the examination proceeded with reference to other matters. The applicant contends that this unanswered question and the action of the court with respect to it constitute prejudicial error. The unanswered question related to an entirely irrelevant subject and should not have been asked. In the absence of an answer, however, it can not be said that it was prejudicial to any right of the applicant. "A question may be ever so bad but ordinarily there is no prejudicial error in its mere asking. The error generally lies not in the question itself and alone, but in the answer which the erroneous question adduces." *State of West Virginia, which sues, etc., Connellsville By-Product Coal Company* v. *Continental Coal Company,* 109 W. Va. 557, 155 S. E. 667. It does not appear that the unanswered question, as a statement by the attorney for the defendants, and his added remark were prejudicial to the applicant, but even if they may be so considered, the error was waived by its attorney in not moving the court to strike them and to instruct the jury that they should be disregarded. To take advantage of remarks considered improper they must be objected to and counsel must request the court to instruct the jury to disregard them. *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d 513; *Gilkerson* v. *Baltimore and Ohio Railroad Company,* 132 W. Va. 133, 51 S. E. 2d 767; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *State* v. *Files,* 125 W. Va. 243, 24 S. E. 2d 233; *State* v. *Fisher,* 123 W. Va. 745, 18 S. E. 2d 649; *Dietz* v. *County Court of Nicholas County,* 122 W. Va. 296, 8 S. E. 2d 884.

By its final assignment of error the applicant assails the

verdict as excessive. The verdict, which was for $850.00, included compensation for the easement taken and damage to the residue. The amount of the verdict is within the range of the evidence as to value given by the witnesses offered by the landowners. The testimony of these witnesses as to the difference between the market value of the land occupied by the easement immediately before and immediately after it was taken was from $126.00 to $225.00, and as to the difference between the market value of the residue, immediately before and immediately after the easement was taken, was from $1,200.00 to $2,500.00. This evidence is in sharp conflict with that given by the witnesses offered by the applicant which fixes the values in much smaller amounts. In addition to the testimony of the witnesses, the jury viewed the land, and though the view is not in all respects evidence, it enabled the jury to understand the opinion evidence adduced in court. *Doman v. Baltimore and Ohio Railroad Company,* 125 W. Va. 8, 22 S. E. 2d 703. Concerning the question of inadequacy or excessiveness of the amount of a verdict in a proceeding in eminent domain, in *County Court of Mingo County v. Chattaroy Coal Company,* 105 W. Va. 321, 142 S. E. 430, this Court held in Point 1 of the syllabus: "In condemnation proceedings courts will rarely set aside verdicts on the ground that the award of compensation for the land taken and damages assessed for injury to the residue is insufficient or is too great, where there is a sharp conflict in the evidence as to the amount of compensation, and damage, if any, and the verdict is founded on any reasonable view of the conflicting evidence strengthened by the jury's view of the property as affected by the public improvement." See also *State Road Commission v. Moss,* 108 W. Va. 267, 150 S. E. 722; *Guyandot Valley Railway Company v. Buskirk,* 57 W. Va. 417, 50 S. E. 521, 11 Am. St. Rep. 785; *Kay v. Glade Creek and Raleigh Railroad Company,* 47 W. Va. 467, 35 S. E. 973. The rule by which a court will be governed in acting upon a verdict challenged as excessive, in an action in which the claim is for unliquidated damages, announced, recognized and applied in many decisions of this Court, is that the verdict will not

be set aside as excessive unless it is unsupported by the evidence or is so large that it indicates that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *Meadows* v. *Corinne Coal and Land Company*, 115 W. Va. 522, 177 S. E. 281; *Thalman* v. *Schultze*, 111 W. Va. 64, 160 S. E. 303; *Bowling* v. *Guyan Lumber Company*, 105 W. Va. 309, 143 S. E. 86; *Truschel* v. *Rex Amusement Company*, 102 W. Va. 215, 136 S. E. 30; *Wilson* v. *West Virginia Amusement Company*, 99 W. Va. 290, 128 S. E. 381; *Gibbard* v. *Evans*, 87 W. Va. 650, 106 S. E. 37; *Given* v. *Diamond Shoe and Garment Company*, 84 W. Va. 631, 101 S. E. 153; *Hunt* v. *DiBacco*, 69 W. Va. 449, 71 S. E. 584; *Kennedy* v. *Chesapeake and Ohio Railway Company*, 68 W. Va. 589, 70 S. E. 359. There is nothing to indicate that any of the elements mentioned in the rule is present in this proceeding to justify this Court in setting aside the verdict as excessive. Though the amount may be somewhat higher than this Court would be willing to award, it may not be vacated solely for that reason. Where damages are indeterminate, mere difference of opinion between the court and the jury will not justify the court in disturbing the verdict.

As no prejudicial error appears in the case, the judgment of the circuit court is affirmed.

*Affirmed.*